W. CLAYTON CLARK, APPELLEE, V. JOSEPH HASS, APPELLANT.

FILED MAY 17, 1935. No. 29216.

*Fred P. Komarek* and *Bernard J. Klasek,* for appellant.

*Robert R. Hastings, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and REDICK, District Judge.

CARTER, J.

This suit was commenced to foreclose a real estate mortgage on 160 acres of land in Saline county. The land was in two tracts, one consisting of 120 acres and the other of 40 acres. The district court found that the appellee had a first lien upon the 120-acre tract which at the time of the sale amounted to $12,314.64, and that the appellee had a first lien upon the 40-acre tract which at the time of the sale amounted to $3,311.77. The court also found that there was a valid second lien against all of the lands mentioned, which at the time of the sale amounted to the sum of $3,491.38. The decree of foreclosure was entered on September 27, 1932. By stipulation, the appellant and mortgagor received a stay of proceedings for one year instead of the usual nine months' stay allowed by statute. After the expiration of the stay, the mortgaged land was sold under an order of sale. Before a confirmation of the sale was had, the appellant, Joseph Hass, as owner and mortgagor, applied for a moratorium staying further judicial proceedings until March 1, 1935, under the Nebraska moratory act. Comp. St. Supp. 1933, sec. 20-21,159. Under this statute, mortgagors were permitted by judicial order to retain possession of the mortgaged premises until March 1, 1935, on condition of paying rent and complying with other terms imposed by the trial court, unless upon hearing of the application, good cause is shown to the contrary. From an order denying the application and confirming the sale, the appellant brings this appeal.

The appellee contends that the trial court rightfully denied the application and confirmed the sale for two reasons: First, that the moratory act, section 20-21,159, Comp. St. Supp. 1933, is unconstitutional; and, second, that the mortgage indebtedness far exceeds the value of the land, and that under such circumstances the trial court was not required to grant the application.

It is conceded by counsel in the argument to the court, and the record so discloses, that the constitutionality of section 20-21,159, Comp. St. Supp. 1933, was not raised in the district court. It cannot therefore be considered on this appeal under the recent holdings of this court in *Bell v. Niemann*, 127 Neb. 762, and *Howarth v. Becker*, 128 Neb. 580.

The only question left for consideration is whether the trial court erred in denying the application for a moratorium under the facts in this case. The counter showing of the appellee discloses that the total amount of the liens against the mortgaged lands is $19,117.79. The land was sold for $15,626.41, which the court found to be a fair value. The appellant offered no evidence to dispute the fact that the value of the mortgaged real estate was less than the amount of the liens against it and we therefore assume that the appellant has no equity in the property at the present time. The question is whether the trial court must, as a matter of right, grant a moratory stay under section 20-21,159, Comp. St. Supp. 1933, where it appears that the mortgage security is of less value than the liens against it.

Under the moratory law the court is required to grant the stay therein provided for, "unless upon hearing on said application, good cause is shown to the contrary." In other words, does a showing that the liens against the mortgage security exceed its value constitute good cause to the contrary? The very purpose of the moratory act was to protect the interests of the mortgagors where, because of the existing emergency, their lands would be sold to satisfy mortgage liens of a much less amount than the value of the mortgagor's interest. But a mortgagor who has no actual equity in the land has no valuable interest to protect. The appellant quotes freely from the opinion in *Blaisdell v. Home Bldg. & Loan Ass'n*, 189 Minn. 422, and especially from the concurring opinion of Chief Justice Wilson therein. However, the language of Wilson, C. J., on page 434, in that case upholds our view of the law, viz.: "It follows that it is detrimental to the

public interest for our people to lose their valuable lands, improved or unimproved, at a time when the banks are closed and when it is impossible to find any one who will make a mortgage loan. Funds are simply not available regardless of the security offered. The plight of the land-owner has been enhanced because of the depreciation in land values resulting in many cases of the land being worth less than the mortgage. In such case the mortgagor can have no legislative help."

There is still another reason why *Blaisdell v. Home Bldg. & Loan Ass'n, supra,* is not an authority in the case at bar. It must be borne in mind that the opinion of a court should be interpreted as a whole, and construed with reference to the facts on which it is based; the language used must be held as referring to the particular case and read in the light of the circumstances under which it was used and of the issues as framed by the pleadings. 15 C. J. 970. "Judicial precedents are valuable only in so far as they state definite rules for guidance in future similar cases. The authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court." 15 C. J. 939.

In this connection it must be remembered that the evidence in *Blaisdell v. Home Bldg. & Loan Ass'n, supra,* as disclosed by the opinion in *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U. S. 398, showed, and the court so found, that the property covered by the mortgage was of the reasonable value of $6,000, and that it was sold at judicial sale under mortgage foreclosure for the sum of $3,700.98. In *W. B. Worthen Co. v. Thomas,* 292 U. S. 426, Chief Justice Hughes, in distinguishing the case of *Home Bldg. & Loan Ass'n v. Blaisdell, supra,* said: "But we also held that this essential reserved power of the state must be construed in harmony with the fair intent of the constitutional limitation, and that this principle precluded a construction which would permit the state to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. We held that when the exercise of the reserved power of the

state, in order to meet public need because of a pressing public disaster, relates to the enforcement of existing contracts, that action must be limited by reasonable conditions appropriate to the emergency. This is but the application of the familiar principle that the relief afforded must have reasonable relation to the legitimate end to which the state is entitled to direct its legislation. Accordingly, in the case of *Blaisdell,* we sustained the Minnesota mortgage moratorium law in the light of the temporary and conditional relief which the legislation granted. We found that relief to be reasonable, from the standpoint of both mortgagor and mortgagee, and to be limited to the exigency to which the legislation was addressed."

Also, in *W. B. Worthen Co. v. Kavanaugh,* 55 Sup. Ct. Rep. 555, Justice Cardozo, in delivering the opinion of the court, said: "Upholders of the challenged acts appeal to the authority of *Home Bldg. & Loan Association v. Blaisdell, supra,* the case of the Minnesota moratorium. There for a maximum term of two years, but in no event beyond the then existing emergency, a court was empowered, *if there was a proper showing of necessity,* to stay the foreclosure of a mortgage, but only upon prescribed conditions. 'The mortgagor during the extended period is not ousted from possession, but he must pay the rental value of the premises as ascertained in judicial proceedings and this amount is applied to the carrying of the property and to interest upon the indebtedness.' 290 U. S. 398, at page 445, 54 Sup. Ct. 231, 243, 78 L. Ed. 413, 88 A. L. R. 1481. None of these restrictions, nor anything approaching them, is present in this case. There has been not even an attempt to assimilate what was done by this decree to the discretionary action of a chancellor in subjecting an equitable remedy to an equitable condition. Not *Blaisdell's* case, but *Worthen's (W. B. Worthen Co. v. Thomas, supra),* supplies the applicable rule." (Italics ours.)

It can readily be seen that in a case where the value of the security is less than the amount of the liens against it, as in the case at bar, the decision in *Blaisdell v. Home Bldg. & Loan Ass'n, supra,* could not be a controlling

authority because of the wide variance of the facts in the two cases. We fail to see how there could be a "proper showing of necessity" if the applicant for the moratory stay had no valuable interest to protect. We hold in the case at bar, in the words of Justice Cardozo, that our statute contemplates "an equitable remedy to an equitable condition," and "Not *Blaisdell's* case, but *Worthen's (W. B. Worthen Co. v. Thomas, supra)*, supplies the applicable rule."

It was clearly not the intent of the legislature that every person should be entitled to a moratory stay as a matter of right, otherwise there would have been no occasion for the words, "unless upon hearing on said application, good cause is shown to the contrary," contained in the act. We therefore conclude that it must have been the intent of the legislature to relieve only such mortgagors as have an interest in their lands over and above the liens against them.

It was the intent of the legislature undoubtedly to afford relief to mortgage debtors who would lose valuable property because of the existing economic emergency. It was not its intention to keep mortgagors in possession of their lands irrespective of the fact that they had no valuable interest therein.

We hold, therefore, that the showing that the amount of the liens exceeds the value of the mortgaged lands is such a showing as may constitute good cause to the contrary within the purview of section 20-21,159, Comp. St. Supp. 1933. It is largely a matter of discretion on the part of the trial court after hearing the evidence and considering the circumstances of each particular case, and, in the absence of an abuse thereof, the judgment of the trial court will not be disturbed on appeal. The trial court did not abuse the discretion reposed in him by statute when he denied the application in the case at bar. The judgment of the trial court is right and the same is

AFFIRMED.