CLARENCE A. CURYEA, APPELLEE, V. CORA FRY ET AL., APPELLANTS.

277 N. W. 598

FILED FEBRUARY 11, 1938. No. 30198.

*Hoagland, Carr & Hoagland,* for appellants.

*Albert S. Johnston* and *S. S. Diedrichs, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and WILLIAM A. DAY, District Judge.

PAINE, J.

This is an appeal from an order confirming a foreclosure sale and directing a writ of restitution.

This action involves a farm of a trifle over 62 acres in Lincoln county, Nebraska, which land is located about ten miles west of the city of North Platte, just south of the Lincoln Highway. It is a very well-improved farm, all under irrigation, with early priority water rights paid for, which make it very valuable.

In the decree of foreclosure, dated May 24, 1935, the court found that there was due on both the first cause of action on plaintiff's tax sale certificates, and on the second cause of action, being the mortgage given May 3, 1929, the sum of $5,145.12, and that there was also due on the third cause of action $297, each with interest at 10 per cent. Defendants were granted a nine months' stay.

On April 28, 1936, an order of sale was issued to the sheriff, and on June 11, 1936, he made a return, showing he had sold the premises to the plaintiff for $4,000. Objections were filed to the confirmation. On July 10, 1936, the district court ordered that $172, received from the state of Nebraska for borrow dirt used in paving the Lincoln Highway, and paid into court, be accepted, and that the $172 should be applied upon the amount of the plaintiff's decree. On the same date the district court decreed a moratorium until March 1, 1937, upon application of the defendants, the conditions of said moratorium being that the defendants pay one-third of all crops grown thereon as rental.

On March 3, 1937, plaintiff moved that the moratorium heretofore allowed be discontinued, and that the sale be confirmed, and on March 11, 1937, filed a waiver of all claims for deficiency judgment, and on the same day the sale was confirmed and deed ordered. Notice of appeal and bond were given by the defendants.

The defendants set out as grounds why the order of confirmation should be vacated: That there was no finding that a resale would not bring a higher bid; that the

property sold for its fair value; that there was no showing made to entitle the plaintiff to have the order of moratorium vacated; and no showing that the defendants do not have an equity in the property; and that the decree is in conflict with the prior order of the court.

An examination of the order of confirmation discloses that said order sets out that the court has examined the proceedings; that said sale was in all respects conducted in accordance with law; that said premises were sold for their fair value under the terms and conditions of the sale, and that a resale would probably result in no higher bid, the plaintiff having filed a waiver of a claim for deficiency judgment, in accordance with the requirement of the court, as a condition of the confirmation of the sale.

This decree of confirmation appears to comply with all the requirements found in section 20-1531, Comp. St. 1929, including the additional provision inserted in the amendment as set out in Laws 1933, ch. 45. It is stated that the amount of the mortgage liens and costs, with interest to the date of the confirmation, less the $172 received from the state of Nebraska, made a total indebtedness of $6,290.95, and that this did not take into account the real estate taxes for the years 1932 to 1936, or the drainage assessments, which, it was testified by defendant O. F. Fry, were originally $1,500, but which he shows by affidavit amount to a total of $1,264.80, to be paid over a period of 20 years. Mr. Fry admitted that there was gravel in spots in the south side of the land. He claimed that the improvements on the land were worth $4,000 or $5,000.

As to the value of this land, Mr. John P. Roberts, called as a witness by the plaintiff, who had been in the real estate business since 1917, gave its value as $65 an acre, and, under further examination, not to exceed $75 at the time he was testifying. W. H. Jenkins, the chairman of the drainage board and the owner of land in the valley, testified as to the bonded indebtedness of the drainage board.

On the part of the defendants, Ed Briegel, whose land adjoins the defendants' land on the south, testified that in his opinion $75 to $100 would be a good price, the way things were at that time. Mr. Briegel, on direct examination, was asked this question and made the following answer: "Do you know of any loans on, or sales of land being made on the land in that community or neighborhood? A. Well, I know of foreclosures, but no sales, because the drainage that spoils the whole sale. There is no use of talking about selling any land in there as long as the drainage is the way it is; a man that has got any brains at all wouldn't loan you a dime on our land because he would lose the dime."

Theodore Lowe, who was for 12 years county clerk and county assessor, and at present in the real estate business, owned 80 acres lying west of the Fry land, and had listed it for sale at $40 an acre for eight months without getting an offer. He testified that, if this land were entirely free from the drainage taxes, it ought to be worth $100 an acre, which is the price the state of Nebraska paid for the small amount which it used for road purposes.

In our opinion, supported by all the evidence, the defendants had no equity in the property, and in such a case they were not entitled to a further moratorium, the one granted having expired by its terms. *John Hancock Mutual Life Ins. Co. v. Cover*, 132 Neb. 427, 272 N. W. 230; *Security Mutual Life Ins. Co. v. Herpolsheimer Bldg. Co.*, 132 Neb. 149, 271 N. W. 343; *First Trust Co. v. Rathbone*, 132 Neb. 211, 271 N. W. 428. But defendants are given right to redeem at any time before mandate issues herein.

Finding no error in the record, the decree of the district court is

AFFIRMED.