## Application of RUDD

RUDD, Respondent, v. STATE, Appellant

(1 N. W.2d 869.)

(File No. 8496. Opinion filed January 14, 1942.)

**Leo A. Temmey,** Atty. Gen., and **W. Ward Wyman,** Asst. Atty. Gen., for Appellant.

**W. W. French,** of Yankton, for Respondent.

SMITH, J.  This appeal presents for review the discretion exercised by the Circuit Court in granting petitioner a fourth extension of time in which to redeem from the sale of his farm under proceedings in mortgage foreclosure.

The farm consists of 180 acres in Yankton County, with moderate improvements, 90 acres of cultivated land and the balance in pasture and hay land.  The farm was formerly owned by petitioner's father, and had constituted the family home since petitioner was three years old.  On March 31, 1921, the father mortgaged the property to the State through the Rural Credit Board to secure the repayment of the principal sum of $3,000 in annual installments.  Foreclosure proceedings were instituted in the fall of 1935, and at the sale the property was bid in by the Department for the sum of $4,099.85, the amount then due under the terms of the mortgage.  Petitioner commenced to operate the property as tenant of his father in 1932, and in 1937 became the owner of the property through a deed of conveyance by the father. The first extension was granted petitioner in an uncontested proceeding by order dated March 15, 1937.  That order extended the period of redemption to March 1, 1939, and required the petitioner to deliver to the State two-fifths of the corn and small grain grown and to pay $200 during the extended term in installments of $50 payable September 1st

and December 1st of each year, and further required petitioner to pay the 1936 taxes and to enter into a tax contract to discharge unpaid delinquent taxes on or before May 1, 1937. In February, 1939, petitioner sought a second extension. The State resisted this application. At the hearing it was shown that the petitioner had failed to pay the $200 and the 1936 taxes and to enter into a tax contract as directed by the former order. The Court not only granted an extension to February 1, 1940, but it relieved the petitioner of obligation for $150 of the amount due under the former order representing the rental value of pasture and hay land, and nullified its former direction that petitioner pay the 1936 tax. and enter into a tax contract. This order of extension directed petitioner to pay $50 on or before August 1, 1939, in discharge of his former $200 obligation, $20 September 1st and $20 October 1, 1939, as the value of the rent for pasture, buildings, hog lots and timber land, and to deliver to the State two-fifths of the small grain and corn and one-half of the hay in the stack, costs of threshing, husking and hauling to be discharged by petitioner. Over the objection of the State the Circuit Court granted petitioner a further extension to March 1, 1941, on condition that he pay $20 September 1, 1940 and $20 October 1, 1940 and deliver two-fifths of the small grain and corn free of cost for hauling, threshing and husking. On February 27, 1941, petitioner sought his fourth extension. The application was again resisted by the State. Upon the hearing it appeared that the amount due under the mortgage had mounted to $6,132.24 including principal and interest and delinquent unpaid taxes. The property, according to the record and admissions contained in the briefs, was then of a value of $6,000. Petitioner's assets, aside from the farm, then consisted of three horses, four cows, four sows and a Farmall McCormick Deering Tractor on which he owed $200. It further appeared that petitioner had failed to make the cash payments under the last order for extension and had fed the two-fifths of the grain and corn ordered turned over to the State to hogs and had sold the hogs. The barley and corn so fed was valued at $120.56. We assume that petitioner kept the buildings in

repair and conducted his farming operations in a good husbandlike manner.

The petitioner expressed the view that the money he could make off from the farm, if he was favored with normal conditions, plus what he could borrow with the farm as security would permit him to redeem. All the record shows with reference to petitioner's effort to refinance his mortgage is a statement that he "spoke to different ones."

The hearing was held on April 8, 1941. On April 18, 1941, the Court entered its order in which it found that petitioner "has now fully paid to the State of South Dakota Rural Credit Department the sum of $160.56, the amount due the State of South Dakota under the moratorium order entered December 9, 1939," and granted petitioner an extension of time in which to redeem until February 1, 1942, upon conditions identical with its order of December 9, 1939. The appeal is from the order so entered on April 18, 1941.

Chapter 163, Session Laws of 1941, under which the Circuit Court proceeded, but re-enacts the substance of Chapter 207 of the Session Laws of 1937 construed by this Court in the Equitable Life Assurance Society of the United States v. Pendar et al., 65 S. D. 376, 274 N. W. 553. It was there pointed out that an extension of the period of redemption is not a matter of absolute right. To safeguard the public from the social and economic dislocations which would result from widespread transfer of title and possession of real property to mortgagees through foreclosure precipitated by drought and the depression, the courts were clothed with power by the act to examine the circumstances of each particular case in the light of the emergency and the public purposes to be served by the act, and to grant equitable relief. In other words, it became the function of the courts to apply an equitable remedy to an equitable situation. See Clark v. Hass, et al., 129 Neb. 112, 260 N. W. 792. To warrant a court in affording him a remedy a petitioner must establish a basic equitable right to relief.

We are not unmindful of the fact that this foreclosure deals with a family home. However, dismissing the

inequitable conduct of the petitioner from consideration and looking solely to the fact that the mortgagee, at the time of the hearing, had been compelled to stand aside for over four years to afford petitioner opportunity to redeem; that during that period the mortgage indebtedness had steadily mounted from day to day, and then exceeded the value of the property; that each day of additional delay permitted would involve unrecoverable loss to the mortgagee; and that the petitioner's chance of redeeming is wholly conjectural, we are unable to discern even the shadow of a basic equity to support petitioner's claim to further indulgence. Therefore the order of the learned trial court is reversed.

RUDOLPH, P. J., and POLLEY and ROBERTS, JJ., concur.

WARREN, J., concurs in result.